Mathews, J.
delivered the opinion of this court. This case comes upon several bill of exceptions, and an agreement of counsel, by which the facts are to be ascertained. As the record contains sufficient matter to enable the court to give judgment on the merits, it is thought unnecessary to notice the bills of exceptions.
The defendant and appellee is sued as surety of J. Jarreau, who is a debtor to the plaintiff of $1318 25, the price of three negroes, purchased from him as appears by promissory notes, bearing date of the 17th and 20th of January 1806, for the purchase money, payable in March 1808.
When the contract was entered into the plaintiff, principal debtor and defendant resided in the parish of Pointe Coupee, but previous to the *640 notes becoming due, viz. in August or September, 1806, Jarreau, the principal debtor, being about to remove out of the parish, the plaintiff requested some security for the payment of them, and the defendant, at the request of the debtor, indorsed his name on each of the notes. These indorsements being in blank, and not in the regular customary mode of transferring negociable paper among merchants, it became necessary to resort to other evidence, besides that contained in the written instruments, in order to discover what species of obligation the defendant intended to bring himself under to the payee.
East’n. District.
March 1817.
The testimony of Petion, a witness in the cause, together with all the circumstances which attended the transaction, as exhibited in the record, shews clearly, that the indorsements made by the defendant and appellee were intended to secure the payment of the notes, when they should become due.
One of these notes not being drawn, in a negociable form, and the indorsement in all being irregular, we are of opinion, that the contract is not one of those which are to be governed by the rules and regulations peculiarly applicable to the transfer of bills of exchange and other negociable paper, which pass from an individual to another in a regular course of trade.
*641 From the laws of France, as cited by the counsel of the defendant and appellee, it seems that an indorsement, similar to those now under consideration, would in that country, create a mercantile contract denominated an aval, which would be subject to the rules which govern cases of ordinary indorsements. But these laws cannot be applied to contracts made in this country, and it is agreed that no similar rule is to be found in our laws relating to commerce.
The defence of the appellee, so far as it is founded on the negligence of the plaintiff, in not having the notes protested for non-payment, and failure to give notice, as in regular mercantile transactions of this nature is not supported; because the obligations of the parties must he ascertained by the principle of law, which is given in ordinary cases of suretiship.
Jarreau, having already been prosecuted to insolvency, in an action commenced by the plaintiff no question can arise, with regard to the discussion of his property. The only one which can arise in the case is whether the surety ought to be exonerated from the payment of the note, in consequence of the creditor, not having prosecuted the principal debtor in a reasonable time, if by such a negligence, he has destroyed or lessened any of the rights or privileges, which *642 the surety ought have been subrogated to, on being compelled to pay for the debtor.
The notes became due in March 1808, and it does not appear that the plaintiff sued Jarreau till 1811—an indulgence of three years. Believing, as we do from the evidence in the case, that the defendant in putting his name on the back of the notes, intended to contract towards the payee an ordinary obligation of suretiship, it is unnecessary to enquire what would be the effect of a delay on the part of the creditor to pursue the principal debtor, in a case where the surety contracts a special obligation to pay for the debtor, if he should be unable to make payment. It is a general principle of law, that no person against his will can be compelled to sue another, and our code gives the surety the right of suing the principal debtor for indemnification, when the debt is due by the expiration of the term for which it had been contracted. Civ. Code, 430. art. 18. The surety, having this right of action in himself, cannot justly claim an exoneration from his obligation, as a consequence of the delay of the creditor to sue, unless this negligence on his part can be considered such a conduct on his part, as will amount to an act whereby the subrogation of his rights, mortgages and privileges, can no longer operate in fa *643 vour of the surety. The question is reduced simply to this: is the defendant and appellee entitled to the benefit of the action cedendarum actionum? And perhaps, if he intended to take advantage of this, he ought to have entitled himself thereto by plea.
As this question appears to have been justly settled by Pothier, we think it proper here to introduce the author’s own reasoning: "when, the creditor has allowed some right of hypothecation on the goods of his debtor to be lost, either by omitting to oppose the adjudication of the property in favor of other persons, or by suffering persons purchasing without the charge of hypothecation, to acquire a liberation from it by a possession of ten or twenty years, can the co-debtors in solido and sureties oppose the exc eption cedendarum actionum, upon the ground: that he has disabled himself from ceding to them his hypothecary action, which he has suffered to be lost, and upon which they had relied for recourse, in case they should be compelled to pay the whole? I do not think that they can; the exception cedendarum actionum, as it appears to me, ought not to be opposed to the creditor, unless by a positive act, on his part, he has rendered himself incapable of ceding his actions against one of the debtors by discharging his *644 person or property, or unless by allowing a demand, which he has instituted to be dismissed, he has laid himself open to the suspicion of collusion. But a mere negligence on his part, in not interrupting the possession of purchasers, or in not opposing the adjudication to other creditors, ought not to subject him to the imputation: because he is only subjected to the cession of his actions, by a mere principle of equity, not having contracted any precise obligation to the other debtors and sureties to preserve them: it is sufficient that he act with good faith: that is, that he do nothing contrary to his obligation and he ought not to be answerable for mere negligence." 2, Pothier on obligations, n. 520 in finem.
From this authority, it is evident that mere negligence on the part of the creditor, will not exonerate the surety, altho’ thereby some privilege be lost to the latter. It does not appear that Lawrence himself ever used any diligence either by suing the principal debtor for indemnification, as he might have legally done, or at any time requiring the creditor, on payment to transfer to him the rights, actions and previleges which he possessed.
We think the parish court erred, in consideri *645 ng the contract, on which this action is founded as one recognised by the laws of France, under the name of aval, and in applying the rules established for the government of such contracts, in that country, to the present case.
Smith for the plaintiff, Denis for the defendant.
It is therefore ordered, adjudged and decreed that the judgment be annulled, avoided and reversed: and proceeding to give such a judgment as in our opinion the parish court ought to have given, it is ordered, adjudged and decreed that the plaintiff and appellant recover from the defendant and appellee the sum of $1348 24, with legal interest thereon, from the judicial demand and costs.